## FOX v. WARNER–QUINLAN ASPHALT CO.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1910.)

1. NEGLIGENCE (§ 37*)—EXCAVATIONS ON LAND OPEN TO PUBLIC.

The owner of premises had a circuitous route across them, which it permitted the public to use without restriction, in going to one avenue from another; and, knowing that such route was being used by the public generally, it excavated a part thereof, without notice to the public or a pedestrian long accustomed to use such route, who was injured by falling into the excavation in the dark. *Held*, that it was guilty of actionable negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 52, 53; Dec. Dig. § 37.*]

2. NEGLIGENCE (§ 136*)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Contributory negligence in such case was clearly a question of fact for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 333–346; Dec. Dig. § 136.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Onondaga County.

Action by Earl Fox against the Warner-Quinlan Asphalt Company. Plaintiff was nonsuited, and his complaint was dismissed, and he appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

William M. Peckham (Walter W. Magee, of counsel), for appellant.
Alexander D. Jenney, for respondent.

McLENNAN, P. J. The defendant is a corporation having an office and place of business in the city of Syracuse. At the time of the accident which is the subject of this controversy, and for a long time prior thereto, the defendant was a dealer in sand, gravel, crushed stone, and cement, and an importer and refiner of natural asphalt, and as a part of such business, and in the conduct of the same, it owned in fee and was in possession of a tract of land situate in the city of Syracuse, comprising several acres. It was bounded on the north by West Brighton avenue, on the east by Midland avenue, on the south by West Lafayette avenue, which extends practically parallel with West Brighton avenue, and on the west by Onondaga creek, which extends practically parallel with Midland avenue. The avenues or streets which bound the defendant's lands were all public highways or streets, and were each in proper condition for the use of the public.

It appears that for a period of 20 or more years, and during the entire ownership of the defendant and its predecessors, the public was permitted to cross the lands of the defendant in a circuitous route extending from West Lafayette avenue on the south to West Brighton avenue on the north, that such route across such premises had been so long continued in use that it was well defined, and that there never had been any objection by the defendant to the use of such circuitous route upon its premises by the public. It appears conclusively that the defendant had knowledge of the use which was being made of the route across its premises. Indeed, it is established without contradiction that such use was practically continuous by day and by night by the traveling public.

Immediately prior to the accident in question the plaintiff was proceeding westerly along Brighton avenue until he came to the route over defendant's lands. He then walked south on this route until he had reached a point about midway between Brighton avenue and West Lafayette avenue, when he suddenly fell into an excavation therein, which was made by the defendant. The night in question was dark, and there were no guards about the excavation or lights along the roadway.

Practically the only question presented bearing upon defendant's negligence is whether it could make for its purposes an exceedingly dangerous place in such route without warning. In other words, the proposition is: May an owner of real property permit the traveling public to cross his premises, such permission being without right or authority, except that the owner does not object to it, and then suddenly, for some purpose of his own, cause an obstruction in such route

as will render it very dangerous to those who have been accustomed to travel thereon with safety?

It has been held that, where one party seeks to cross the premises of another without invitation, or without such relations with the owner as entitle him to be upon the premises, he goes upon the same at his risk, and the owner of the premises is under no obligation to exercise ordinary and reasonable diligence in order to protect such party. It has been also held that a mere licensee upon premises is not entitled to the protection of the rule of ordinary care on the part of the owner of such premises, unless the injury complained of resulted from such a device as a trap or explosion of dynamite, etc.

The cases which are cited in the respective briefs deal with three classes of cases: First, where the landowner sets a trap or gun or other device which would be naturally dangerous to the lives of the people who are accustomed to travel upon the route, and to which he has assented; second, the cases where the people traveling upon such route were invited to travel, either by express invitation or because of their relationship to the landowner; and, third, where the defendant has committed some affirmative act of negligence, such act, to illustrate, involving a person in great danger who might be traveling on the route in question.

In the case at bar the defendant practically conceded that it knew that the route which the plaintiff traversed had been used by the public for 20 or more years; that such route was well defined; that it was from 10 to 15 feet in width, made as the ordinary country highway is made; that the people of that section of the city were accustomed to travel over it, both day and night, without objection on the part of the defendant, and with its full knowledge as to the extent and use of such route. Without any warning the defendant excavated into the route which with its consent had been used by the public for 20 years or more, and without any warning or indication that the public right of use had been interrupted.

It seems to me that the proposition involved upon this appeal is very simple and plain, if the ordinary principles of justice and equity are applied. The defendant had a circuitous route across its premises, which it permitted the public to travel upon without restriction in going to one avenue from another. The defendant knew that the route thus permitted to be used by it was being used by the public generally. Without warning or notice to such public, or to the plaintiff, it excavated a part of such route, and the plaintiff was injured because of such excavation.

It seems to me that clearly the defendant is liable because of its action in the premises. It excavated a hole in the traveled route 20 or 30 feet deep, and it would seem that such action on its part was no more indicative of negligence than if it had set a steel trap or placed a dynamite bomb to waylay the traveler upon such route. I have given full consideration to the cases cited by the respondent's counsel (McCann v. Thilemann, 36 Misc. Rep. 145, 72 N. Y. Supp. 1076, affirmed on the opinion below in 74 App. Div. 630, 77 N. Y. Supp. 1131; Beck v. Carter, 68 N. Y. 283, 23 Am. Rep. 175; Larmore v. Crown Point Iron Co., 101 N. Y. 391, 4 N. E. 752, 54 Am. Rep. 718; Murphy

v. City of Brooklyn, 118 N. Y. 575, 23 N. E. 887), but I cannot bring myself to the conclusion that the defendant was not guilty of actionable negligence in causing the route in question, extending across its premises, to become in such situation as to render it exceedingly dangerous to people, including the plaintiff, who had been accustomed to travel thereon.

The question of plaintiff's freedom from contributory negligence is clearly a question of fact for the jury. He had been over the route for years, and was led to believe that it was a safe route for him to travel upon from one street to the other. He did not realize, and in the exercise of ordinary care and prudence was not called upon to know or appreciate, that the excavation made by the defendant extended so far as to interrupt his passage, especially when there was no notice given to him at the place where he entered the route that any change had taken place in the situation as to the safety of persons who might wish to travel thereon.

It follows that the judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event, and the questions of defendant's negligence and the plaintiff's freedom from contributory negligence submitted as questions of fact for the determination of a jury.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event. All concur.