# THE COMMONWEALTH ELECTRIC COMPANY

*v.*

## DAVID MELVILLE.

*Opinion filed April 20, 1904—Rehearing denied June 8, 1904.*

1. APPEALS AND ERRORS—*when Supreme Court will not consider an alleged error.* On appeal to the Supreme Court from the Appellate Court by the same appellant, error assigned on the record of the trial court will not be considered if not presented by appellant's brief to the Appellate Court.

2. ELECTRIC COMPANIES—*right to put cable under sidewalk limited to actual space needed.* An ordinance granting an electric company the right to put a cable under a sidewalk does not entitle the company to permanently occupy the entire space under the walk, but only so much as is needed for the cable and any devices used to support it and keep persons from coming in contact with it.

3. SAME—*ordinary care in use of electricity is care commensurate with danger.* Ordinary care to be exercised by a person or corporation operating an electric plant for profit, to prevent injury to others from the electric current, requires greater precaution and skill than where the element used in the conduct of a business is less dangerous.

4. SAME—*what does not relieve a company from liability.* The accidental placing of plaintiff's hand upon a defectively insulated electric wire strung under an elevated sidewalk by authority of an ordinance, while he was under the walk to ascertain the location and cause of a fire occasioned by the wire, is not an act of trespass which relieves the electric company from liability, if such liability is otherwise established.

5. NEGLIGENCE—*what tends to show negligence on part of electric company.* Failure of an electric company to use some device to guard its wires strung under an elevated sidewalk so that no person could inadvertently touch them tends to show lack of ordinary care.

6. TRIAL—*when the question of contributory negligence is for the jury.* Whether or not the plaintiff's act in going under an elevated sidewalk to ascertain the location and cause of a fire in the walk, where he received an injury from accidentally placing his hand upon defendant's defectively insulated electric wire strung underneath the walk by permission from the city, constitutes contributory negligence, is a question of fact for the jury.

*Commonwealth Electric Co.* v. *Melville,* 110 Ill. App. 242, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RUSSELL P. GOODWIN, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment for $3500 rendered against appellant in the circuit court of Cook county as damages for a personal injury sustained by David Melville, the appellee.

The injury was caused by contact with an electric wire or cable belonging to the defendant, which had been placed underneath a wooden sidewalk on Ogden avenue, in the city of Chicago. This sidewalk passes in front of a vacant lot. On one side of the lot is a building used for a barber shop, and on the other side is a building referred to as a brick building. The sidewalk in front of these premises is about five feet above the ground over which it is built. The surface of the vacant lot is almost on a level with the ground under the sidewalk, and the surface of the street is a little lower than that of the lot. The sidewalk is nine or ten feet in width. The curb-stone extends from the surface of the street up to the outer edge of the sidewalk and separates the space below the sidewalk from the street. The space in front of the barber shop and that in front of the brick

building are enclosed on all sides and are used for storing coal. Both are separated from that in front of the vacant lot by wooden partitions. The space in front of the lot is not enclosed on the side next to the lot, and there is nothing to prevent a person on the lot from going under the sidewalk. There is no fence at the back of the lot, which opens on an alley. In front of the lot, extending up from the inner edge of the sidewalk, is a bill-board about twenty feet in height. There is a space of from two to three feet between the sidewalk and the bottom of the bill-board, so that a person seeking access to the lot from the street would have to crawl through the space between the sidewalk and the bill-board. The electric wire or cable of the defendant was fastened to the under part of the sidewalk, and lay either alongside or on top of the curb-stone or stone wall which separates this space from the street.

On October 22, 1900, this wire became out of order and the electricity escaping from it set fire to the lower part of the sidewalk to which it was fastened, causing smoke to come up between the boards of the sidewalk in front of the barber shop and for quite a distance along the block but not in front of the vacant lot. This attracted a considerable number of men and boys, among them the plaintiff, who was a boy fourteen years of age. The cause of the smoke had not been discovered when appellee, in company with two other boys, crawled through the space between the sidewalk and bill-board, dropped down to the lot, and from there went under the sidewalk over to the farther side next to the curb-stone or stone wall. Plaintiff's two companions looked through a hole in the partition which separated the space in front of the lot from that in front of the barber shop, and saw the sidewalk on fire where the wire or cable was attached to it in front of the shop. Plaintiff then attempted to look through the hole, but in some way slipped, threw his right hand up and caught hold of the wire, which at

that place sagged down from the sidewalk several inches, thereby receiving a shock which rendered him unconscious, and the wire burned his hand to such an extent that its usefulness is greatly impaired and the hand is permanently injured.

The evidence for the plaintiff tends to show that this cable consisted, first, of a copper wire which carried the electricity. This was enclosed by the insulating material, and the whole was covered with lead, except at the joints, where the wire and insulation were encased by another insulating material. When new, the cable had an outside covering of jute. This had worn off or decayed in many places, leaving the lead, which is a conductor of electricity, exposed. A "ground," as that term is used by electrical experts, is occasioned by a defect or break in the insulation, which permits the current to escape from the copper wire to the lead covering and from there to the earth. In such instances the current is carried along the cable by the lead and communicated to anything with which the lead comes in contact.

The evidence also tends to show that this cable had been "grounded" in the vicinity of the accident on several occasions shortly prior to the time of the injury; that it had been in use for a period of from eight to fourteen years; that the wire in the circuit of which it was a part had frequently been repaired by removing pieces of the cable and replacing them with new cable, but that portions of the cable as originally placed were still in use on the circuit; that a short distance from the place where the injury occurred the circuit had been out of order about two weeks before October 22; that at that time there was a "ground" on the circuit, and defendant's employees, in attempting to locate the trouble, had gone under the sidewalk in front of the vacant lot, and that on the day preceding the injury to the plaintiff the wire was out of order under the sidewalk in front of the adjoining lot.

The evidence further tends to show that the vacant lot had been used by children of the neighborhood as a play-ground for a considerable period prior to October 22, 1900; that children often went under the sidewalk from the lot when playing games, and sometimes for shelter from the sun or rain.

The declaration, as originally filed, consisted of three counts. Afterwards four additional counts were filed.

At the close of plaintiff's evidence, and again at the close of all the evidence in the case, the defendant moved the court to give to the jury an instruction to find the defendant not guilty, and at the same time offered an instruction which directed the jury to return such verdict. The court overruled the motion and refused the instruction in each instance.

The errors assigned and urged by appellant for a reversal of the cause are: First, that no count of the declaration states a cause of action; and second, that the court should have given the peremptory instruction.

F. J. CANTY, and R. J. FOLONIE, for appellant.

ELA, GROVER & GRAVES, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It is urged that the declaration herein does not state a cause of action. This question arose in the circuit court upon a motion in arrest of judgment. Appellee, upon leave obtained in this court, has filed here a certified copy of the brief and argument of appellant which was filed in the Appellate Court. It appears therefrom that in that court the insufficiency of the declaration was not suggested, but it is said that where a declaration omits to aver a material fact essential to a valid cause of action, the judgment will be reversed although no question is made below. It is unnecessary to discuss this proposition, as the authorities cited in support thereof do not

apply in a court of review, where the question is pending on appeal from or writ of error to an intermediate court which is likewise a court of review. We can only determine whether the Appellate Court decided correctly. (*National Bank* v. *LeMoyne*, 127 Ill. 253.) In doing this it is manifest we can consider no matters except those which were presented to that court. (*Sherwood* v. *Illinois Trust and Savings Bank*, 195 Ill. 112.) We will not consider an error assigned on the record of the court of original jurisdiction which was not presented by appellant's brief to the Appellate Court where the same party is the appellant here.

Appellant assigns as error the action of the circuit court in overruling its motion for a peremptory instruction at the conclusion of all the evidence, and appellee insists that this alleged error was not presented in the Appellate Court. We find, on examination of the brief filed by the electric company in that court, that it was there urged that there was no evidence tending to prove negligence on the part of the defendant or the exercise of due care by the plaintiff, and as this is the question which appellant argues under this assignment in this court, we think it proper for our consideration.

It is earnestly insisted on the part of the electric company that the relation of the plaintiff to the defendant was that of trespasser or licensee, and that consequently the defendant was not liable unless the injury to the plaintiff resulted from some willful or wanton act of the defendant. We think this a misapprehension. The only right the electric company had under the ordinance was a right to place its wire under the sidewalk. It was entitled to permanently occupy no more space for that purpose than was necessary for the wire and any devices used to protect the wire and to keep persons from coming in contact therewith. It had no right or permission to occupy the whole of the space under the sidewalk where the accident occurred.

It appears that there was nothing to prevent access from the alley in the rear to the lot fronting on this space; that boys were in the habit of playing on that lot and passing into this space under the sidewalk to shelter themselves from rain or sun, or for any other purpose that occurred to them, and that this was done without objection from the owner of the lot or the city, and on the occasion of this accident the plaintiff went under this sidewalk in company with three other boys, one of whom, at least, had been in the habit of playing on the lot.

It is manifest that it was not the purpose of the city that the public should have access to and use this space as it did the space above the sidewalk. If, however, the curb, which was at the outer edge of this sidewalk and prevented access to the space from the street, had not been there, there could be no question but that the public would have had the same right to pass under this sidewalk from the street that they would have to pass under a stairway or platform of a station of an elevated railway located in the street. There the public has, and exercises, the right to pass over the same portion of the street on two different levels, and it seems apparent that the public would have the same right to pass upon this space where they came upon it from an abutting lot, in the absence of objection from the lot owner.

Plaintiff was therefore rightfully in this space, and he was not there by the leave or license of the defendant. The same rule does not apply to him as applies to one who goes upon the property of another, whether with or without permission. He was not upon property either owned or controlled by the defendant.

It is then urged that he became a trespasser when he laid his hand upon the wire, by virtue of his act in touching the wire without the permission of the owner thereof, and *Hector* v. *Boston Electric Light Co.* 161 Mass. 558, is referred to in support of this position. In that case the plaintiff received the injury while upon the roof of a

building where he had no right and where he was neither invited nor licensed to be.   The distinction is apparent. Plaintiff's act in taking hold of the wire was an accident. The injury resulted from that accident, and while it may be conceded that he had no right to take hold of the wire, the question still remains, who was responsible for the injury that resulted from his accidental contact with that wire?   So far as being in the space under the sidewalk was concerned, plaintiff had the same right to be there that the defendant had, but he could not rightfully interfere with the property of the defendant or occupy the space already pre-empted by it.   Appellant urges that the rights of the parties to be in this space were not equal, for the reason that it was there in pursuance of the terms of an ordinance and could not be summarily ejected, as the plaintiff, perhaps, might be.   This is wholly immaterial.   The question is not how long either party had the right to remain, but what right they had to be there at the instant of the accident.

The evidence tends to prove that the electric cable passing along under this sidewalk had been in use from eight to fourteen years; that in some places the insulation was defective; that the cable had been out of repair on several occasions near the place where this accident occurred; that the wire had on frequent occasions prior to this accident been "grounded" in the vicinity where this trouble occurred; that the effect of that condition is to send a current of electricity along and on the lead covering of the cable; that when a "ground" would occur, the lead on the outside of the cable would be electrified from the "ground," in each direction, to a place where there would be another "ground," or a point in the cable where the current would be broken or stopped by a different covering used at the joints.   This was a high tension wire, carrying 2000 volts of electricity, and the lead covering, when so electrified, would severely shock and burn any human being coming in contact therewith.

Electricity is a subtle and powerful agent. Ordinary care exercised by those who make a business of using it for profit, to prevent injury to others therefrom, requires much greater precaution in its use than where the element used is of a less dangerous character. As there is greater danger and hazard in the use of electricity, there must be a corresponding exercise of skill and attention for the purpose of avoiding injury to another, to constitute what the law terms "ordinary care." The care must be commensurate with the danger. 10 Am. & Eng. Ency. of Law, (2d ed.) p. 873; *Alton Illuminating Co.* v. *Foulds,* 190 Ill. 367; *Perham* v. *Portland General Electric Co.* 33 Ore. 451; *Haynes* v. *Raleigh Gas Co.* 114 N. C. 203; *McLaughlin* v. *Louisville Electric Light Co.* 100 Ky. 173; *Ennis* v. *Receiver,* 87 Hun, 355.

We are of the opinion that the appellant's failure to use some device to guard its wires in this space under this sidewalk so that no person could inadvertently touch the cable tended to show a lack of ordinary care.

It is urged, however, that the plaintiff was guilty of contributory negligence, as a matter of law, in going under the sidewalk, and we are referred to the case of *Heimann* v. *Kinnare,* 190 Ill. 156. This is a case where a boy lost his life by drowning. A small pond was partly filled with water and the water was partly covered with ice, there being an open space of water around the edge of the ice. For the purpose of ascertaining if the ice thereon was strong, he ran down an incline leading to the water, jumped over the open water upon the edge of the ice and ran out toward the middle of the pond, where the ice gave way and he was drowned. He knew before going there that the water was beyond his depth. He had knowledge of the danger consequent on the breaking of the ice. In the case at bar the plaintiff did not know that the wire in question was under the sidewalk and did not know that there was danger there of the kind he encountered. He was attracted to this place by fire in

the vicinity, occasioned by the "grounding" of this wire. At the place where the accident occurred he was not near enough to the fire so occasioned to be in danger from the fire itself, and while negligence cannot be attributed to the defendant for a failure to correct the difficulty which had resulted in the wire being "grounded" on this occasion, as it does not appear that it either had or ought to have had notice that the wire was so "grounded," still it was natural for the boy to gratify his curiosity by going into this space for the purpose of looking at the fire, and in so doing he went where he had a right to go and where he had no reason to anticipate any serious danger. The question of contributory negligence was one for the jury.

We do not think the doctrine of traps or that of attractive nuisances applicable.

No other errors have been discussed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*