FIRST NAT. BANK OF OXFORD *v.* MISSISSIPPI UNEMPLOYMENT COMPENSATION COMMISSION.

(In Banc. Oct. 22, 1945. Suggestion of Error Overruled Nov. 12, 1945.)

[23 So. (2d) 534. No. 35923.]

**James Stone & Sons**, of Oxford, for appellant.

100

Harry M. Bryan and Henry Edmonds, both of Jackson, for appellee.

Argued orally by **Phil A. Stone**, for appellant, and by **Harry Bryan** and **Henry Edmonds**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

The question for decision is whether the bank's janitor is an employe as ruled by the Commission, or whether he is an independent contractor as argued by the bank. It is not necessary to decide whether we may look to the record of the evidence, the review being on certiorari, for the reason that if we concede for the purpose of the present controversy everything which the bank asserts that the evidence shows in its behalf, the judgment must still be affirmed.

The janitor during the remainder of his time when not serving the bank was employed as a member of the household staff of the bank's attorney, his duties to the bank as janitor requiring an active period of about an hour each week day, and for his convenience the janitor did his work at the bank during other than banking hours. The contract between the bank and the janitor, although never actually signed, has been put into the form of a written memorandum, and the agreement was carried out by the parties thereto strictly according to the contract, which is as follows:

"The First National Bank of Oxford, Mississippi, a corporation, and Joby Strother have this day entered into the following contract:—

"Joby Strother is to perform all necessary janitor services for said bank including sweeping, mopping, dusting, disinfecting, firing the furnace each day and putting ice in the water cooler. Strother is to perform this work at any time during the day it suits his convenience and is to do it entirely without supervision. He is not to perform any other services for the bank and is not to be available during the day when the bank is open for business.

"In the event that Strother is unable to perform these services on any day it is understood and agreed that he is to make his own arrangements for his substitute and pay such substitute himself without any supervision or selection by said bank. The said bank is to pay Strother the sum of $12.00 per month payable the first of each month beginning February 1, 1944. This contract is to terminate at midnight on December 31, 1944.

"Said Strother is not to receive any bonus or other payment from said bank except as set out before, the compensation set out above is to be his entire compensation under this contract."

It is conceded that in addition to the above terms the bank was to furnish, and did furnish, to the janitor a key to the bank and all the implements and supplies used by the janitor in the performance of his duties as such.

Under this state of facts the bank says that it was interested only in the net results of the employment, and that because under the terms of the contract strictly observed by the bank it had no control, and exercised no control, over the details of the work, the janitor was an independent contractor. In Jensen v. Barbour, 15 Mont. 582, 593, 39 P. 906, and in other cases to the same effect, annotated in 37 Words and Phrases, Perm. Ed., p. 475, the courts have addressed themselves to what is meant by the terms "result" or "net result," and have said

that the terms as used in connection with the doctrine of independent contractor means a production or product of some sort and not a service; that plowing a field, mowing a lawn or driving a carriage is not a result in the sense that the word or term is used in the rule, and that such acts are simply a service.

We do not agree that in all cases it is necessary that there shall be some new product or something made into a different form, but we must be strongly persuaded that the work of a janitor, regularly employed, who sweeps and scrubs today and does the same tomorrow and every day, accomplishing nothing of a permanent nature, but only that which is temporary, from one day to another, and so on in succession, is not producing a net result as contemplated by the rule which is here invoked, although it might be, since every case of this kind must be decided upon its specific facts, that a janitor who is in that business as an independent trade, and who goes from one establishment to another, furnishing his own conveyances and tools and supplies, might be made an independent contractor.

No case has been found precisely in point with the facts of the case at bar, and counsel for appellant concedes that such a case cannot be found. The excellent briefs which have been presented by both sides disclose that the entire field of investigation has been exhausted. No case has been found where an employe working in his employment on the premises of the employer with the tools and facilities of the employer, not by the job, but day by day in the course of a regular employment for a long-time contract period and paid a regular compensation at the end of each month, and wherein the employe puts into the engagement nothing whatever except his labor, with nothing done by him which involves the exercise of any trade skill or business judgment, has been thought to be any other than simply a servant, and no case has been found where under such a state of facts it has been sought to change the relationship into that of independent contractor by a contract wich stipulates that the employer

shall exercise no control whatever over the employe. That there is no such case in all the years that have passed in modern times is persuasive at least there ought to be none such now. If the real relationship, under such a state of facts, could be changed by a contract device such as last mentioned, employers could write themselves out from under nearly every workmen's compensation law or unemployment compensation statute in existence today.

In Kisner v. Jackson, 159 Miss. 424, 132 So. 90, we referred to the various formulas by which the courts have striven to define or describe what is meant by independent contractor, and there pointed out that the question at last is whether in the given case the contractor is actually independent. And "in this, as in many other cases, courts must look at transactions in their actual character, piercing through the screen of technical attitudes to what are the realities, and must regard substance rather than formal similitudes," Hederman v. Cox, 188 Miss. 21, 40, 193 So. 19, 24; and we now add the further observation that the field within which the doctrine of independent contractor may operate cannot be extended so as to embrace every form of employment. A single illustration is sufficient to disclose that the reach of the doctrine cannot be made universal. The family coachman or chauffeur cannot be converted into an independent contractor by any form of contract that may be drawn, for if all the incidents of control over his services were withdrawn by the contract he would no longer be a coachman or a chauffeur, but would be only a taker of wages.

We have all heard, and more often in late days, of the family cook who will not work save with the distinct understanding that she is not to be supervised or directed as to any of the details as to how she is to do the work. Yet none would suppose that she is nevertheless, any other than a servant. Conceivably a housemaid, whose employment is in a large measure similar to that of a janitor, might insist as a condition of her employment, that she be free from all supervision of control, and that

this by necessity or otherwise would be specifically accepted as an agreement by her employer, yet the maid or janitor regularly employed as such, would be, nevertheless, a servant.

Thus the pertinency of what is said in vol. 1, A. L. I. Rest. Agency, under Section 220, at pages 486, 487: "Even where skill is required, if the occupation is one which is ordinarily considered as a function of the regular members of the household or *an incident of the business establishment of the employer* there is an inference that the actor is a servant. Thus highly skilled cooks or gardeners, who resent and *even contract against interference* are normally servants if *regularly employed.*" Italics ours. With equal reason a janitor, who puts into the service nothing but his labor, would be included and when so done, the quotation, which we endorse, covers the case now before us, without the necessity of further elaboration. We are of the opinion that a servant regularly employed to labor for wages upon the domestic or business premises of his employer, with the tools and equipment of the employer, although arrayed in the livery of an independent contractor, is still a servant.

Affirmed.